UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

In re:  Case No. 07-20864

E. HAROLD BUNTING,  Chapter 7

      Debtor.  Honorable Daniel S. Opperman
_____/

OPINION REGARDING LEGAL ISSUES OF SECURED STATUS
OF CLAIM OF CREDITOR VIRGINIA KOZLOWSKI AND
DEBTOR'S SECOND AMENDED CLAIM OF EXEMPTIONS

The Court held a status conference on the record on February 13, 2009, in which the parties participated by telephone. The purpose of this status conference was to discuss and pre-try various matters set for final evidentiary hearings on March 27, 2009. At the status conference, the parties indicated that the Court's decision on two legal issues concerning these matters may assist in facilitating settlement of some of these matters, or, at a minimum, assist the parties in their efforts to present their issues and proofs most efficiently. The Court and the parties have identified the following legal issues for determination by this Court at this preliminary stage in the proceedings:

    (1) Whether and to what extent Virginia Kozlowski holds secured claims on certain parcels of real property owned by the Debtor.

    (2) Whether Debtor is entitled to exempt his entire equity in his real property located at 2224 SE 20th Avenue, Cape Coral, Florida ("Cape Coral Property"), under Florida Homestead exemption law.

The parties agree that the record before the Court is sufficient for the Court to make a ruling on these issues. The Court has reviewed the relevant pleadings and attachments thereto, many of which consist of state court orders and pleadings. The Court agrees that the record is sufficient to make these rulings.

I.    Status of Virginia Kozlowski on Debtor's Real Property

1

The parties dispute the effect the state trial and court of appeals divorce proceedings have had on the status of Ms. Kozlowski's liens on certain parcels of real property. The property at issue includes real estate commonly referred to as the Kelly Lake Property, the Townline Lake Property, the Burbank Property and the Dearborn Heights Property. The Court has reviewed the relevant pleadings in this matter, including: the Consent Judgment of Divorce entered on March 14, 2002, in the Washtenaw County Circuit Court; the opinion of the Michigan Court of Appeals dated July 27, 2004, which affirmed in part, reversed in part, and remanded the March 14, 2002, Judgment back to the Washtenaw County Circuit Court; and the January 21, 2005, Order Conforming Consent Judgment of Divorce to Court of Appeals Opinion, entered by the Washtenaw County Circuit Court ("Conforming Order").

To summarize these pleadings, the March 14, 2002, Consent Judgment of Divorce identified a number of properties owned by the parties and then stated the disposition of each item, including, where applicable, the mode of transfer and the retention of a security interest in that property by the transferring party. By way of example, the Townline Lake and Kelly Lake properties were awarded to the Debtor, with Ms. Kozlowski retaining a security interest in the Kelly Lake and Townline Lake properties. The Consent Judgment of Divorce states:

> 7. Defendant shall deliver to Plaintiff, through counsel, a quit claim deed, drafted by Defendant's counsel, to the Kelly Lake and Townline properties awarding all right, title and interest in the property to the Defendant pursuant to this Consent Judgment. Plaintiff shall execute said deeds in favor of Defendant after all other terms and provisions of this Consent Judgment are fully satisfied. Plaintiff shall retain a security interest in the Kelly Lake and Townline properties until all the terms and provisions of this Consent Judgment are fully met. Plaintiff may file a Notice of Lien citing the terms and provisions of this Consent Judgment to perfect her security interest and lien in these properties.
>
> 8. To the extent that they are not inconsistent with the terms and provisions of this Consent Judgment, this Court's previous orders regarding transfer and encumbering of the Townline and Kelly Lake properties remain in full force and effect and Defendant may not encumber either property until his obligations to Plaintiff pursuant to this Consent Judgment are fully satisfied.

Likewise, the Burbank Property was treated in the Consent Judgment of Divorce as

follows:

> 3. Plaintiff shall deliver to Defendant, through counsel, a fully executed quit claim deed, drafted by Defendant's counsel, to the property, awarding all right, title and interest in the property to the Defendant pursuant to this Consent Judgment, after all other terms and provisions of this Consent Judgment are fully satisfied.
>
> 4. Defendant shall be solely liable for any and all underlying costs or debts associated with the property including, but not limited to, any and all taxes, maintenance, dues or other costs due to the Condominium Association, holding Plaintiff harmless and indemnifying her thereon. Plaintiff shall retain a security interest in the Burbank property until all the terms and provisions of this Consent Judgment are fully met. Plaintiff may file a Notice of Lien citing the terms and provisions of this Consent Judgment to perfect her security interest and lien.

The Dearborn Heights Property, identified as 8639 Columbia, was described in similar fashion:

> 3. Plaintiff shall deliver to Defendant, through counsel, a fully executed quit claim deed, drafted by Defendant's counsel, awarding all right, title and interest in the property to the Defendant pursuant to this Consent Judgment, once all terms and provisions of this Consent Judgment are fully satisfied. Plaintiff retains a security interest and lien on the Columbia property until the terms and provisions of this Consent Judgment are fully met. Plaintiff may file a Notice of Lien citing the terms and provisions of this Consent Judgment to perfect her security interest and lien in this property.

The Consent Judgment of Divorce awarded many properties to the Debtor. Near the end of the Consent Judgment of Divorce, Ms. Kozlowski was given a blanket security interest in all assets awarded to the Debtor:

> Plaintiff Virginia Bunting is granted a security interest in the assets awarded to Defendant Harold Bunting until all financial obligations by Defendant as provided by this Consent Judgment are fully met.

On page 3 of its Opinion, the Michigan Court of Appeals held:

> In comparing the consent judgment with the settlement agreement on the record, we find that the consent judgment did not comport with the agreement on record with respect to the following items: the consent judgment improperly restricted defendant's ability to transfer or encumber the Kelly Lake and Townline Lake properties, improperly gave plaintiff a lien in all property awarded defendant, and permitted plaintiff to convey defendant's interest after all terms of the consent judgment had been satisfied while requiring defendant to immediately convey plaintiff's interest. There was clearly disagreement with respect to the lien provisions, and plaintiff should not have been permitted to unilaterally add

the lien provisions to the consent judgment.

The Conforming Order addressed the relevant provisions reversed by the Michigan Court of Appeals as follows:

> IT IS FURTHER ORDERED AND ADJUDGED that the provisions in the March 14, 2002, Consent Judgment of Divorce establishing liens in favor of the Plaintiff in all property of the Defendant are hereby vacated and shall have no force and effect.
>
> IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's interest in the property awarded to Defendant shall be secured by liens in each of the properties listed below, which properties were awarded to Defendant in the Consent Judgment of Divorce; these liens shall remain in effect until such time as Defendant has satisfied his obligations to Plaintiff pursuant to the Consent Judgment of Divorce, as modified by this order and/or other post-judgment orders of this Court. Pursuant to this order, Plaintiff retains liens in the following properties:
>
> A. Kelly Lake property;
> B. Townline Lake property;
> C. 3505 Burbank, Ann Arbor, Michigan;
> D. 8639 Columbia, Dearborn Heights, Michigan;
> E. Cash value or proceeds of Defendant's Equitable Life Insurance Policy.
>
> IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff's security interest may be perfected by filing and recording certified copies of the Consent Judgment of Divorce and the Order Conforming Consent Judgment of Divorce to Court of Appeals Opinion in the offices of the Register of Deeds in the counties in which the real properties are located and with the escrow agent of the Defendant's life insurance policies.

The Court first notes that the Conforming Order was entered during Debtor's previous bankruptcy, but after lift of stay to do so had first been obtained via order dated November 9, 2004. As to the substance and effect of the Conforming Order, such clearly stated that Ms. Kozlowski retained her liens in the above-listed real property, and that such liens would remain until Debtor satisfied his obligations to Ms. Kozlowski under the Judgment of Divorce. The Conforming Order further provided that Ms. Kozlowski may perfect her liens by filing and recording such with the appropriate Registers of Deeds offices, which she thereafter did. The parties do not dispute that Ms. Kozlowski properly perfected her liens in these properties pursuant to the March 14, 2002, Judgment of Divorce, but they do dispute the effect the

4

Conforming Order had on these liens, and further dispute the effect of Ms. Kozlowski's recording of these liens after the Conforming Order was entered.

It is noteworthy that the Michigan Court of Appeals specifically reversed paragraph 8 in regard to Kelly Lake and Townline Lake. The reference to the lien in "all property awarded to Defendant" can and does only refer to the later granting of a lien identified near the end of the Consent Judgment of Divorce. The Michigan Court of Appeals did not specifically reverse the creation of liens in Kelly Lake or Townline Lake, even though that language was directly above the offending language reversed by the Court of Appeals. The Court of Appeals' Opinion is silent as to specific properties on which a lien was retained by Ms. Kozlowski. There is nothing in the record to suggest that the Michigan Court of Appeals glossed over this distinction. The Opinion of the Michigan Court of Appeals contains numerous references to specific property and acts of the parties, so it is clear to this Court that the Michigan Court of Appeals was thoughtfully specific in its direction to the Circuit Court.

Moreover, the Conforming Order specifically vacated the blanket lien and ordered that it would have no force and effect. The Conforming Order continued to state that Ms. Kozlowski <u>retained</u> liens on the four parcels of real estate and cash value or proceeds on the Debtor's Equitable Life Insurance Policy. Finally, the Conforming Order directed that Ms. Kozlowski's security interest may be perfected by filing and recording certified copies of the Consent Judgment of Divorce and the Conforming Order. There is no mention, much less a requirement, that the Consent Judgment of Divorce be re-recorded. As to this fact, the record is clear that all parties knew that Ms. Kozlowski recorded the Consent Judgment of Divorce shortly after its entry by the trial court.

The Court concludes that the Conforming Order did nothing more than reiterate Ms. Kozlowski's continuing liens in these properties. It did not create new liens and certainly did not vacate existing ones. The Court can find no interruption in Ms. Kozlowski's liens since the March 14, 2002 Judgment of Divorce was entered. The Court concludes that the provision in the Conforming Order, which allowed Ms. Kozlowski the opportunity to record the Conforming

5
07-20864-dob    Doc 701    Filed 02/27/09    Entered 02/27/09 16:47:52    Page 5 of 10

Order with the appropriate Registers of Deeds' offices did not create or in any way impact Ms. Kozlowski's liens. Further, the Conforming Order was entered after lift of stay in Debtor's previous bankruptcy case so there is no issue as whether the Conforming Order is voidable as violative of the automatic stay. Finally, the Court concludes that there is no evidence before it establishing the existence of liens by any individual or entity, which might have priority over those of Ms. Kozlowski.

II.    Debtor's Entitlement to Exemption Under Florida Law in Cape Coral Property

On June 5, 2008, Debtor amended his Bankruptcy Schedules A, B and C. Notably, Debtor amended his Schedule C–"Property Claimed as Exempt"–to claim exemptions under state law pursuant to 11 U.S.C. § 522(b)(3)(A). Specifically, Debtor claimed an exemption in the full $260,000.00 value of the Cape Coral Property pursuant to the Florida Constitution, Art. X, § 4(a)(1) and Fla. Stat. Ann. §§ 222.01, 222.02 and 222.06. On June 12, 2008, the Chapter 7 Trustee objected to Debtor's amended exemptions as to all assets, with particular attention to the amended exemption in the Cape Coral Property, arguing that the amendments were made in bad faith. The Trustee argues that the Cape Coral Property was not Debtor's domicile for the requisite amount of time pursuant to 11 U.S.C. § 522(b)(3)(A), which is 730 days, and if it is determined that such was his domicile for the requisite amount of time, Debtor acquired his interest in the property within the 1,215-day period prior to the petition date, and is, therefore, limited to an exemption of $136,875.00 pursuant to 11 U.S.C. § 522(p)(1). This, the Trustee argues, would leave non-exempt equity for any value in excess of $136,875.00. Debtor and petitioning creditor Sandweiss Law Center, P.C. argue that Florida was and is Debtor's domicile since February 1, 2005, which is beyond the 730-day period, and further argue that Debtor acquired his interest in the Cape Coral Property long before the Section 522(p)(1) 1,215-day pre-petition period. Ms. Kozlowski filed her concurrence with the Trustee's Objection.

The parties do not dispute that the impact of Florida law would be to fully exempt Debtor's interest in the Cape Coral Property if two conditions are met: (1) Debtor's domicile was

6

07-20864-dob    Doc 701    Filed 02/27/09    Entered 02/27/09 16:47:52    Page 6 of 10

in Florida for the 730-day period prior to the petition date as required by Section 522(b)(3)(A); and (2) if the first condition is satisfied, Debtor did not acquire his interest in the Cape Coral Property within 1,215 days prior to the petition date. If condition one is satisfied, but condition two is not, the parties do not dispute that Debtor's exemption would be capped at $136,875.00.

Section 522(b)(3)(A) states that if the debtor claims exemptions under state law, the state exemption law that applies is determined by the state in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition. If the debtor's domicile has not been located in a single state for the 730-day period, then the controlling state law is that of the state in which the debtor was domiciled for the 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place. As discussed by notable bankruptcy treatise, Collier on Bankruptcy, the term "domicile" has a purposeful meaning for this subsection:

> "Domicile" as used in section 522 means more than mere residence. Although domicile and residence are often loosely used as synonymous terms, the specified reference to each in the Code indicates an intention to maintain a legal distinction between them. The residence of a debtor may be nothing more than a place of sojourn. While ordinarily used in a sense of fixed and permanent abode, as distinguished from a place of temporary occupation, the term "residence" does not include the intention required for domicile. Domicile means actual residence coupled with a present intention to remain there. It is the place where one intends to return when one is absent and where one's political rights are exercised. Mere physical removal to another jurisdiction without the requisite intent is insufficient to effect a change of domicile. The fact that the debtor, therefore, has resided elsewhere during the 730-day period will not defeat the applicability of the law of the state where the debtor keeps the principal home. It may be, however, that under the laws of the state of the debtor's domicile that the debtor must also reside within the state to obtain its exemption privileges.

4 Collier on Bankruptcy, ¶ 522.06 (15th ed. rev. 2008).

The term "domicile" under this subsection of the Bankruptcy Code is to be determined under federal common law. *Farm Credit Bank v. Hodgson (In re Hodgson)*, 167 B.R. 945, 949-50 (D. Kan. 1994) (holding that the federal common law should control in the absence of express guidance from Congress, but further noting that "the federal bankruptcy system relies heavily on state law, quoting *Butner v. United States*, 440 U.S. 48, 54, 59 L.Ed.2d 136, 99 S. Ct. 914

7

(1979), for the proposition that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). The Court notes that federal common law, as well as Michigan and Florida state law on the meaning of the term domicile are indeed similar and, thus, is satisfied that use of term domicile as defined by the Sixth Circuit Court of Appeals in the case of *Eastman v. University of Michigan*, 30 F.3d 670 (6th Cir. 1994) provides this Court with a definition of the term "domicile", which encompasses any applicable state law:

> Generally, an individual's "domicile" is his "true, fixed, and permanent home and principal establishment." It is the place to which he returns whenever he is absent. "Residence," in contrast, requires both physical presence and an intention to remain some indefinite period of time, but necessarily permanently. Thus, domicile is an individual's permanent place of abode where he need not be physically present, and residence is where the individual is physically present much of the time. An individual consequently may have several residences, but only one domicile.

*Id*. at 672-73.

Based upon the facts before it, the Court concludes that Debtor was domiciled in Florida for the 730-day period prior to the petition. It is uncontroverted that Debtor has lived at the Cape Coral Property at least part of the time since February 1, 2005, and took steps to establish his permanent residency there at that time. Debtor applied for and obtained a Florida State driver's license and registered to vote on February 1, 2005. The Court is satisfied that Debtor did reside at, and intended to continue residing at, the Cape Coral Property and considered that property as his permanent place of abode for purposes of Section 522(b)(3)(A) at least 730 days prior to the petition date.

Once domicile is established for Section 522(b)(3)(A) purposes, the exemption may be capped pursuant to Section 522(p)(1), which states, in relevant part, that if a debtor has elected exemptions under Section 522(b)(3)(A) under state or local law:

> . . . . a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing the petition that exceeds in the aggregate $136,875 in value in –
>     (A) real or personal property that the debtor or a dependant of the debtor

8

> uses as a residence; [or]
>
> (B) real or personal property that the debtor or a dependant of the debtor claims as a homestead.

There is no dispute that Debtor acquired a legal interest in the Cape Coral Property many years ago, well outside the 730-day, as well as the 1,215-day period. However, the parties spend much time in their briefs arguing that the timing of Debtor's designation the Cape Coral Property as his homestead under Florida law impacts his acquisition of it for Section 522(p)(1) purposes. The Trustee argues that at the earliest, Debtor claimed an effective homestead in the Cape Coral Property in January 2006. Debtor argues that the effective date for determination of homestead purposes should be considered to be February 1, 2005. The difference in timing is impacted by Section 522(b)(3)(A) as the date the petition was filed was April 5, 2007, and if the February 1, 2005, date is used, the petition was filed 794 days after that date; however, if a January 2006, date is used, the petition date falls within the 730-day time frame.

Classification of a homestead interest in property is not equivalent to acquisition of an interest for purposes of Section 522(p)(1). *Wallace v. Rogers (In re Rogers)*, 354 B.R. 792 (N.D. Tex. 2006); *Venn v. Reinhard (In re Reinhard)*, 377 B.R. 315, 321 (Bankr. N.D. Fla. 2007). As the above-cited cases conclude, homestead classification has no bearing on the Section 522(p)(1) determination. Further, the Court did consider this argument as part of its "domicile" determination under Section 522(b)(3)(A), as well and concludes that the timing of this action was merely one fact that was not outweighed by the other facts in favor of finding that the Cape Coral Property was and is Debtor's domicile for purposes of Section 522(b)(3)(A).

In summary, the Court notes that pursuant to Federal Rule of Bankruptcy Procedure 4003(c), that the Trustee, as the objecting party, has the burden to establish that Debtor's exemptions should be disallowed. The Court concludes that the Trustee has not met his burden under either of his Section 522(b)(3)(A) or Section 522(p)(1) arguments. Debtor may exempt

his interest completely in the Cape Coral Property pursuant to Section 522(b)(3)(A). This exemption is limited to Debtor's interest whatever that may be, and is not otherwise subject to any cap on amount.

cc:  E. Harold Bunting
     Kristine Jahr

**Signed on February 27, 2009**

                                  **/s/ Daniel S. Opperman**
                                  **Daniel S. Opperman**
                                  **United States Bankruptcy Judge**