UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    E. HAROLD BUNTING,                     Case No. 07-20864-dob
                                                              Chapter 7 Proceeding
            Debtor.                                   Hon. Daniel S. Opperman
_____/

Opinion Regarding Continuing Objections Filed by
Debtor, Sandweiss Law Center, P.C., and Kristine Jahr to Claim of Virginia Kozlowski

On September 28, 2010, the Court issued an Opinion regarding portions of the multiple objections against the proof of claim filed by the Debtor's ex-wife, Virginia Kozlowski, in the amount of $1,283,557.55. The September opinion found that the decisions by the state court and the Michigan Court of Appeals were not fraudulently procured, and, accordingly, an exception to the *Rooker-Feldman* doctrine did not exist, and Debtor's claims for various credits lacked factual and legal merit. These holdings were detailed in an Order entered on November 5, 2010.

The Opinion, however, identified and left open several discrete issues. The Court directed the parties to submit further information on those issues. The issues for which the Court requested additional information were:

    1.     The Merril Lynch accounts and the division of those accounts between Debtor and Ms. Kozlowski in 2000.

    2.     The value of the various insurance policies and whether any amounts are owed by or to Debtor or Ms. Kozlowski.

    3.     The allegation by Debtor that Ms. Kowlozski settled all of her claims against Debtor in return for the advance of $422,457 from the value of the life insurance policies.

1

4. The objections of Sandweiss Law Center, PLC ("SLC") regarding portions of Ms. Kozlowski's claim for (a) accounting fees, (b) interest calculation, and (c) sanctions of $180,000 (Cape Coral sanction) and $187,830.16 (*Sands v. Sands* sanction). In addition, to the extent these objections mirrored the objections of Kristine Jahr and the Debtor, the Court also left those objections open.

5. The applicability of the *Rooker-Feldman* doctrine to third parties.

The Court will first address SLC's claim that the Court left open or did not rule on its other issues or objections. Next, the Court will discuss Debtor's evidence of the alleged settlement agreement. Finally, the Court will discuss the impact of the *Rooker-Feldman* doctrine on a non-party to the state court action as well as whether the claim preclusion doctrine independently bars the Court's further consideration of SLC's objections.

## Statement of Facts

The Court refers the parties to the September 28, 2010, Opinion wherein the Court detailed the complicated and lengthy factual background of the events leading up to the filing of this Chapter 7 bankruptcy. For brevity, the Court will not repeat those facts here. The Court will include additional pertinent facts as necessary in its discussion.

## Discussion

I. Preliminary matter

Preliminarily, SLC's brief identifies the seven individual objections it filed contesting various aspects of Ms. Kozlowski's claim and suggests that the Court's September 28, 2010, Opinion "did not address" two of those objections, Docket Numbers 743 and 747, as well as certain other discovery "issues" raised in its objection at Docket Number 730 related to the Merrill Lynch

accounts. Contrary to this suggestion, the Court, after identifying the discrete issues the Court sought additional briefing on, clearly held, "All remaining objections to the proof of claim of Virginia Kozlowski are overruled." (September 28, 2010, Opinion, p. 20). Those motions and "issues" identified by SLC were not included in the matters or issues the Court requested further information on. The Court is satisfied its prior holding completely addressed those matters SLC's raises now and considers them overruled as it held earlier.[1]

II. The alleged settlement between Debtor and Ms. Kozlowski

According to Debtor, Ms. Kozlowski agreed to accept the $422,547 insurance policy advance as full settlement of all amounts Debtor owed her. The Court's September 28, 2010, Opinion and November 5, 2010, Order directed Debtor to submit evidence of the alleged settlement between he and Ms. Kozlowski regarding her claims against him "in a single discrete pleading." Debtor, however, filed 10 responses to the September opinion, which can be found at document numbers 929, 931, 935, 941, 942, 944, 945, 946, 949, and 951. The Court meticulously reviewed each of the listed responses and the hundreds of pages of attachments. For the most part, each response simply

---

[1] In any event, SLC acknowledges that Docket Number 747 pertains to attorneys' fees awarded pursuant to the Washtenaw County state court's April 30, 2007, order. As explained below, the *Rooker-Feldman* doctrine precludes any consideration of SLC's arguments because it impermissibly asks this Court to review the award, which was affirmed on appeal by the Michigan Court of Appeals, for such things as alleged due process irregularities, alleged lying by Ms. Kozlowski's state court counsel, or the reasonableness of the fees awarded. With respect to Docket Number 743, SLC argues Ms. Kozlowski cannot claim post-petition attorneys' fees. However, in numerous pre-petition state court orders, Ms. Kozlowski was granted reasonable fees and costs incurred to enforce the state court judgment. SLC has not shown how the fees claimed by Ms. Kozlowski were not so incurred. Moreover, SLC's arguments ask the Court to review the amounts included in a state court judgment, which is impermissible pursuant to *Rooker-Feldman*. Lastly, the other enumerated discovery "issues" in Docket Number 730 supposedly left open are all barred by either the *Rooker-Feldman* doctrine (e.g., the disposition of proceeds from real estate ordered sold pursuant to state court order) or claim preclusion (e.g., capital gains tax issues from the 1996 tax return or alleged procedural due process violations).

3

restates arguments made by Debtor in previous filings or is duplicative. The Court's September 28, 2010, Opinion discussed these objections at length and denied them.

Moreover, Debtor did not clearly identify the document evidencing the alleged settlement. For example, Debtor's response at Docket Number 949 cryptically refers to a "file (c)", a "C19", and an October 9, 2002 letter. The Court was only able to locate the October 9, 2002, letter, authored by Debtor's then state court counsel Mr. Gregory Rohl. The letter is located (among other places) at "File 9" of Docket Number 929. Contrary to Debtor's position that this letter provides evidence of an alleged settlement, the letter actually informs Debtor that Ms.Kozlowski would "relinquish her interest in the [insurance] policies" for the sum of $420,000, and that amount would "satisfy her claim **on the existing policies**." (emphasis added). This clearly demonstrates that the advance of $422,457.00 did not settle Ms. Kozlowski's entire claim against Debtor but, rather, was intended to provide her a portion of her interest in the estimated value of the life insurance policies until a full reconciliation of the policies could be made at a later time. This letter fails to support Debtor's allegations of a settlement of Ms. Kozlowski's entire claim in return for the advance on the insurance policies. Therefore, the Court overrules Debtor's objection on this basis.

III. <u>*Rooker-Feldman* exception as to non-parties</u>

As set forth by the Court in its September 28, 2010, Opinion, under the United States Supreme "Court's *Rooker/Feldman* abstention doctrine, . . . a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. Grandy*, 512 U.S. 997, 1005-06 (1994) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413,

4

416 (1923)). In the Opinion, the Court addressed one exception to the doctrine, that the various state court orders and judgments were not procured by fraud, which was held to not be at issue in these objections.

What is at issue is the doctrine's exception for a non-party to a prior state court action.[2] SLC contends that neither it nor Ms. Jahr or Ms. Gravel-Henkel were parties to the divorce action in state court. The Sixth Circuit has held that "'[t]he *Rooker-Feldman* doctrine does not apply to bar a suit in federal court brought by a party that was not a party in the preceding action in state court[.]'" *Feiger v. Ferry*, 471 F.3d 637, 644 n.4 (6th Cir. 2006) (citing *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995)). This exception to the *Rooker-Feldman* doctrine seemingly would prevent its application to SLC or the other creditors. However, the Court discerns at least two narrow exceptions carved out from this general exception by the Sixth Circuit.

The first exception applies when counsel for the state court party that lost advocates on behalf of the former client in a federal action. In *Fieger v. Ferry*, Geoffery Fieger brought an independent action in part challenging the refusal of certain Michigan Supreme Court Justices to recuse themselves from cases he litigated before that court. *Feiger*, 471 F.3d at 639. The Sixth Circuit acknowledged the general rule against applying *Rooker-Feldman* to Fieger, a non-party who was counsel for clients that lost in an earlier state court action involving the same issue, but stated that "Fieger (whether on behalf of his clients or on his own behalf) cannot seek in federal court to undo a state court judgment." *Feiger*, 471 F.3d at 644 n.4.

---

[2] In the September 28, 2010, Opinion the Court concluded, "To the extent that the objections of . . . Ms. Jahr are similar to those of SLC, the Court leaves those objections open as well." (Opinion, p. 20). The following discussion related to the application of the *Rooker-Feldman* doctrine to a privy of a state court party applies with equal force to any objections by Ms. Jahr that are similar to SLC's open objections.

5

Ms. Kozlowski argues here that "the arguments being presented by [SLC] are essentially as proxy for the Debtor" and that "SLC has taken on the mantle of the Debtor" to advance his claims. The Court agrees and interprets SLC's objections as essentially seeking on behalf of Debtor to undo the Washtenaw County Circuit Court's judgments. For example, SLC contended in its motion to allow discovery (Docket Number 730) that following a meeting with Debtor regarding the issues complained of by Debtor "[f]or numerous months" it determined that "there is merit to many of Debtor's issues[.]" This statement, as well as others made in that motion, indicate SLC is indeed seeking to advance Debtor's objections it believes are meritorious or valid. In addition, Debtor informed the Court on October 21, 2010, that SLC "will check into the fees paid to Grant Millman & Johnson" and "will take care of the objection." (Docket Number 936, ¶ 3d. - 3e.). Debtor appears to be referring to SLC's objection to disallow that portion of Ms. Kozlowski's claim. SLC "cannot seek in federal court to undo a state court judgment" by advancing or championing what in reality are Debtor's objections. Thus, under *Feiger*, the fact that SLC is a non-party to the state court judgments would not preclude application of the *Rooker-Feldman* doctrine.

The second exception carved out of the non-party exception is for a non-party in privity with the state court losing party. The Court acknowledges that the U.S. Supreme Court has held that "[t]he *Rooker-Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment." *Lance v. Dennis*, 546 U.S. 547, 466 (2006). However, the *Lance* Court noted that it "need not address whether there are *any* circumstances, however limited, in which *Rooker-Feldman* may be applied against a party not named in an earlier state court proceeding[.]" *Id*. at 466 n.2 (emphasis in original). A recent opinion from the Eastern District of Michigan also recognized that "*Lance* left the door open from a possible limited application of *Rooker-Feldman*

to a non-party[.]" *Gifford v. Meda*, 2010 WL 1875096, at *6 (E.D. Mich. May 10, 2010). Other federal district courts have similarly recognized this open door. In *Hege v. Aegon USA, LLC*, __ F. Supp. 2d __, 2011 WL 206318, at *5 (D.S.C. Jan. 21, 2011), the court cited the same footnote in *Lance* and stated that "the *Lance* Court did not entirely foreclose the possibility that a nonparty could ever be barred by *Rooker-Feldman* from mounting a collateral attack[.]"

More importantly, several months after the *Lance* decision, the Sixth Circuit directly ruled on the question of "whether the *Rooker-Feldman* doctrine should apply to a federal plaintiff in privity with a party in the state court proceeding." *McCormick v. Braverman*, 451 F.3d 382, 395 (6th Cir. 2006). In *McCormick*, a deceased's daughter brought federal and state claims against various parties alleging they interfered with her interest in real property. *Id*. at 384-85. The property was the subject of the daughter's parents' divorce and the daughter alleged that notwithstanding state court orders she held sole title to the property. *Id*. After the Sixth Circuit examined the *Rooker-Feldman* doctrine at length and determined that it did not apply to certain claims made by the daughter, the Court found that two claims by the daughter might be precluded by the doctrine. The issue was her status as a non-party to the divorce proceedings. *Id*. at 395.

The court in *McCormick* acknowledged that *Rooker-Feldman* applied only to "state court losers" but found that "[u]nder a more moderate interpretation, a person in privity with the actual party who loses in state court may be deemed a state-court loser." *Id*. at 396. "It would be inconsistent to disallow the party in the state suit to raise a federal claim but to allow his privy to bring the exact same claim. A state party may not circumvent the Article III jurisdictional provisions simply by substituting a privy's name for his own in the federal claim." *Id*. The Sixth Circuit continued, "In other words, a federal claim that alleged injury from a state court judgment would seek review of that state court judgment, regardless if the state court loser or his privy filed

7

the federal claim. The district court may not entertain jurisdiction over a claim that calls for appellate review, **no matter who raises that claim**." *Id*. (emphasis added). In a footnote, the Sixth Circuit further observed that "a federal claim filed by a privy of the state court loser that asserts an injury caused by the state court judgment could properly be characterized as an appeal from that judgment." *Id*. at n.9. Because the daughter potentially was a successor in interest and her interest in the property (via a purported conveyance from her mother) was adequately protected by her mother, the *McCormick* Court found her in privity with the state court loser, and held that *Rooker-Feldman* barred jurisdiction over those two claims.

The Court observes that although the holding in *McCormick* appears at odds with the holding in *Lance*, the Supreme Court denied the writ of certiorari filed by the plaintiff-appellant. *McCormick v. Braverman*, 552 U.S. 828 (2007). Moreover, lower courts in this Circuit repeatedly cite *McCormick* for its privity exception to the non-party rule. *See, e.g., McCurdy's Electronic Sec., Inc. v. Daugherty*, No. 3:10–62–DCR, 2011 WL 2133567, at *2 (E.D. Ky. May 26, 2011) (quoting *McCormick*) ("Although the Rooker–Feldman doctrine generally bars claims only by a plaintiff who was a party to the state-court action, the Sixth Circuit has held that 'a person in privity with the actual party who loses in state court may be deemed a state-court loser' whose claim is also barred."); *Crossroads Media, LLC v. Village of Baldwin*, No. 1:06-CV-514, 2007 WL 772901, at *2 (W.D. Mich. Mar. 12, 2007) (citing *McCormick*) ("Plaintiff contends that the *Rooker-Feldman* doctrine does not apply because Plaintiff Crossroads was not a party to the state court action. The Sixth Circuit has determined that the *Rooker-Feldman* doctrine applies not only to parties to the state court action, but also to a federal plaintiff in privity with a party in the state court proceeding."); *Farmer v. City of Cincinnati*, No. 1:04-CV-080, 2006 WL 3762131, at *2 (S.D. Ohio Dec. 21, 2006) (citing *McCormick*) ("The Sixth Circuit has interpreted the 'state court losers' language broadly to

8

include not only the state court losing party, but also those in privity with the state court losing party."). Thus, *McCormick* remains binding law permitting *Rooker-Feldman* to bar a challenge to a state court judgment by the privity of the state court loser.

The Court must therefore determine whether to deem SLC in privity with Debtor. The Sixth Circuit in *McCormick* "defined a privy as either (1) a successor in interest; (2) a nonparty who controlled the original suit; or (3) a nonparty who is adequately represented by a party in the original suit." *McCormick*, 451 F.3d at 395 n.8 (citation omitted). While the Sixth Circuit in *McCormick* applied federal privity law to the state court judgments at issue in that case, *McCormick*, 451 F.3d at 388-89, it cited *Becherer v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 193 F.3d 415, 422 (6th Cir. 1999), for its definition of privity. The *Becherer* decision involved federal district court judgments and the application of *res judicata*, the same doctrine at issue in the later decision of *Bates v. Township of Van Buren,* 459 F.3d 731, 734-35 (6th Cir. 2006). The Sixth Circuit in *Bates* expressly decided that Michigan's privity law, with respect to adequate representation, is broader than the federal limits on that category of privity. The Sixth Circuit specifically held that, under the "adequately represented" category of privity, Michigan law "does not require there be an 'express or implied legal relationship' making one party accountable to the other" in order for parties to be in privity. *Id*. at 737. One recent Eastern District of Michigan court observed that the Sixth Circuit "seems to acknowledge that Michigan's 'privity' or virtual representation law may be more lenient on accepting virtual representation than the federal law in the Sixth Circuit." *SEC v. Conaway*, 697 F. Supp. 2d 733, 745 ( E.D. Mich. 2010) (citing *Bates*). Based on the later specific holding of *Bates*, this Court finds that Michigan privity law is the proper law.

Under Michigan law, a party is in privity with another if they are "so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying

to assert. The outer limit of the doctrine traditionally requires both [1] a 'substantial identity of interests' and [2] a 'working functional relationship' in which [3] the interests of the nonparty are presented and protected by the party in the litigation." *Bates*, 459 F.3d at 734-35 (quoting *Adair v. Michigan*, 470 Mich. 105, 120-22, 680 N.W.2d 386, 396 (2004)). "A privy of a party includes a person so identified in interest with another that he represents the same legal right, including, . . . a principal to an agent, or a master to a servant." *Begin v. Michigan Bell Telephone Co.*, 773 N.W.2d 271, 283 (Mich. Ct. App. 2009) (citing *Adair*, 470 Mich. at 120-22, 680 N.W.2d at 396). As stated by the Michigan Supreme Court, "Clearly, the word 'attorney' connotes an agency relationship between two people." *Omdahl v. West Iron County Bd. of Educ.*, 733 N.W.2d 380, 384 (Mich. 2007).

SLC represented Debtor during portions of the state court litigation, including post-judgment litigation regarding amounts due Ms. Kozlowski, and challenged various aspects of the divorce judgment and fees and costs awarded her. Under Michigan law, this attorney-client relationship is sufficient to find that SLC is Debtor's privy. SLC has so identified itself with Debtor's interest by virtue of its statements that it believes Debtor's various objections are not only meritorious but also valid. In essence, SLC represents the same interest as that of the Debtor – to reduce the amount due to Ms. Kozlowski pursuant to the divorce judgment and post-judgment state court orders. The fact that SLC has other motives, namely to obtain the disallowance of Ms. Kozlowski's claim either entirely or in part so as to increase its potential recovery from Debtor's estate, does not change the analysis. SLC objections are nothing more than "claim[s] filed by a privy of the state court loser that assert[] an injury caused by the state court judgment." This Court finds that, pursuant to *McCormick* and Michigan privity law, SLC is deemed to be "the state-court loser" for purposes of *Rooker-Feldman*.

At least one court post-*Lance* applied these exceptions to nearly identical circumstances as those present here. In *Segovia v. Bach Constr., Inc. (In re Segovia)*, the Ninth Circuit Bankruptcy Appellate Panel reviewed an objection by the debtor's brother to a proof of claim filed by another creditor, Bach Construction, on the basis of a state court judgment against the debtor. *In re Segovia*, 2008 WL 8462967, at *2 (B.A.P. 9th Cir. Oct. 22, 2008). The brother was also debtor's state court counsel and filed a proof of claim for unpaid legal fees. *Id*. The bankruptcy court denied the brother's objection on the grounds that such were barred by *Rooker-Feldman*. The brother appealed arguing that he was not a party to the state court action between his debtor-sister and Bach Construction. *Id*. at *12. With respect to this argument, the court specifically noted that the brother's objections "are necessarily made on behalf of the Debtor and/or the Debtor's estate. . . . Therefore, we disregard as irrelevant, [the brother's] argument for the inapplicability of the Rooker-Feldman doctrine." *Id*. n 31.

The court in *Segovia* then characterized the brother's objection as "essentially . . . assert[ing] that the state court decision was wrong and therefore was unenforceable against the" debtor-sister, and affirmed the bankruptcy court's decision because the brother's objection "was barred as a direct attack on the state court judgment." *Id*. at *13. Expanding on its holding, the court stated: "The fact that it would be [the brother], not the Debtor, asking the bankruptcy court to improperly exercise jurisdiction held exclusively by the U.S. Supreme Court would not create jurisdiction otherwise barred under the Rooker–Feldman doctrine." *Id*. n.34. It is critical to note that the court in *Segovia* began its *Rooker-Feldman* analysis by directly citing the decision by the Supreme Court in *Lance*. Thus, it cannot be disputed that the Ninth Circuit B.A.P. was aware of its holding with respect to the limited application of *Rooker-Feldman* to privity situations.

The Court is persuaded that the reasoning in *Segovia* has equal applicability here. SLC is

11

necessarily making Debtor's arguments on his behalf, as admitted by Debtor and either expressly or impliedly stated by SLC in its objections. SLC is Debtor's former state court counsel as well as being his counsel in bankruptcy for a time. SLC is also a creditor of Debtor, holding a claim that is overshadowed by Ms. Kozlowski's secured claim. Like the brother in *Segovia*, it would benefit SLC greatly if Ms. Kozlowski's claim were partially or entirely disallowed. As noted earlier, SLC is advancing those issues and arguments it believes are valid and meritorious as a result from its meeting with Debtor. The Court finds it irrelevant that it is SLC, rather than Debtor, that is formally articulating these arguments in the form of an objection to Ms. Kozlowski's proof of claim. SLC is in privity with Debtor and therefore is deemed to have the same rights as the Debtor. As in *Segovia*, the fact that SLC is seeking to have this Court exercise jurisdiction that would be improper if sought by Debtor does "not create jurisdiction otherwise barred under the *Rooker–Feldman* doctrine."

Applying the foregoing law to SLC's remaining open objections, it is clear each seeks relief from some portion of an order by the Washtenaw County Circuit Court or the Michigan Court of Appeals. With respect to the nature, value, and division of the life insurance policies, SLC's main objection is that the parties failed to finalize the reconciliation cash surrender value as directed by the Washtenaw County order dated October 7, 2002, and therefore Debtor was not credited for the $422,457 advance. However, the Michigan Court of Appeals, in its May 13, 2008, opinion, rejected this argument because Debtor stipulated to the amount due and owing Ms. Kozlowski and "did not assert a $422,457 credit as he now contends[.]" *Bunting v. Bunting*, No. 272975, slip op. at p. 2-3 (Mich. Ct. App.). The Court of Appeals also found that Debtor did not appeal the denial of his motion to reconcile the insurance policies with the advance. *Id*. For this Court to now review both the state court order and the Michigan Court of Appeals decision would upset state court judgments,

which is precisely what this Court is forbidden to do by *Rooker-Feldman*.

Next, SLC argues the accountants' fees claimed by Ms. Kozlowski should be disallowed because those fees allegedly include amounts charged to her for personal tax services or for services not incurred on her behalf. The Washtenaw County Circuit Court's April 30, 2007, order, entered after this Court lifted the stay, directed Debtor to pay in excess of $566,000 "for costs and attorney fees reasonably and necessarily incurred . . . [by Ms. Kozlowski] to enforce the Judgment of Divorce." Without passing on SLC's arguments, SLC's objection is a *de facto* appeal of that award. This Court is prohibited by the *Rooker-Feldman* doctrine from reviewing the propriety of that award or otherwise delving into what costs were included in that award.

SLC also argues that the Washtenaw County Circuit Court's award of statutory judgment interest on the divorce judgment "equalizer" payment was contrary to Michigan case law applying Michigan Complied Law § 600.6013. The Washtenaw County Circuit Court ordered statutory interest in the Consent Judgment of Divorce as well as in its December 27, 2002, April 11, 2003, July 19, 2006, and April 30, 2007, orders. While the Court believes SLC's argument has merit in part,[3] the award of judgment interest is the subject of a final order of a state court. This Court is prohibited by the *Rooker-Feldman* doctrine from deciding whether the Washtenaw County Circuit Court erred.

---

[3] SLC correctly points out that Michigan law holds that Mich. Comp. Law § 600.6013 "does not apply to money awards in divorce actions." *Olson v. Olson*, 273 Mich. App. 347, 350-51, 729 N.W.2d 908, 911 (2006). However, interest on a divorce money award "may be appropriate pursuant to the trial court's discretion under its equitable powers." *Id*. at 354, 913 (citations omitted). The equitable award of interest hinges on "overdue payment" and "'prevents the delinquent party from realizing a windfall and assures prompt compliance with court orders.'" *Id*. (citation omitted); *see also Lawrence v. Lawrence*, 150 Mich. App. 29, 34, 388 N.W.2d 291, 294 (1986) (discretion to award "interest on awards to be paid pursuant to a property division when such amounts are overdue"). Therefore, under Michigan law the award of judgment interest would be permitted on an equitable basis in light of Debtor's failure to promptly pay the award.

13

The calculation of interest by Ms. Kozlowski, however, appears contrary to the holding of *Chelsea Inv. Group LLC v. Chelsea*, 288 Mich. App. 239, 258-61, 792 N.W.2d 781, 794-95 (2010), which requires the readjustment and calculation of interest every six months from the date of the complaint with the utilization of the applicable interest rate from the preceding January 1 or July 1. As this is a mathematical exercise that does not require judicial intervention or review of a state court judgment, the Court sustains the SLC objection as to the calculation of interest. Ms. Kozlowski is allowed 28 days to recalculate the interest and amend her proof of claim.

SLC also challenges the Washtenaw County Circuit Court's award of sanctions against Debtor. The parties addressed both the pre-petition sanctions of $180,000 ordered by that court on November 8, 2006, and confirmed in its April 30, 2007, order and $187,830.16 ordered on December 27, 2002, and likewise confirmed in the April 30, 2007, order. Although SLC admits that "[i]t is undisputed that the Michigan Court of Appeals confirmed" the $187,830.16 sanction, SLC argues that because the sanction was awarded prior to the stipulation by Debtor and Ms. Kozlowski in April of 2003, the sanction necessarily is included in that stipulated amount. However, the $187,830.16 is clearly and expressly set out from that April 2003 stipulated amount as an additional amount owed in the April 30, 2007, order. In addition to SLC's argument being belied by the plain language of that order, it impermissibly requests this Court to reverse a valid state court judgment. As to the $180,000 contempt sanction for Debtor's refusal to comply with the Washtenaw County Circuit Court's order to convey the Cape Coral property to Ms. Kozlowski, SLC argues that the sanction is unconstitutional and the award was never affirmed by the Michigan Court of Appeals. Similar to the other objections brought by SLC, this Court cannot sit as an appellate court and determine whether the Washtenaw County Circuit Court erred in awarding contempt sanctions. *Rooker-Feldman* bars SLC's objections related to these sanctions.

Finally, SLC contends that the Merrill Lynch accounts jointly held by Debtor and Ms. Kozlowski were not properly divided. In addition, SLC contends Ms. Kozlowski's state court counsel, Ms. Denise Fawcett, failed to account for monies spent and that the Trustee's summary of the division of the accounts cannot be relied on. SLC also argues that the reconciliation report adopted by the Washtenaw County Circuit Court in its order dated December 27, 2002, specifically omits certain items, such as insurance, annuities, "Collegewood," and "implementation costs." The Court, however, is satisfied the attached account statements and the Trustee's summary demonstrate the equal division of the Merrill Lynch accounts. While the reconciliation report does note that certain "items" are not included in the "equalizer" payment, the Washtenaw County Circuit Court's April 11, 2003, order adopted Ms. Kozlowski's summary of amounts due and owing, including amounts for "Collegewood" and "Indian River condem[nation.]" While the remaining "items" are not as clearly identified, the Court cannot review either the reconciliation or April 11, 2003, order pursuant to the *Rooker-Feldman* doctrine.

IV. Claim preclusion

Even if the Court had not determined above that *Rooker-Feldman* does apply to SLC and Ms. Jahr, there still remains Ms. Kozlowski's argument that claim preclusion independently bars the objections. SLC responds that this doctrine does not bar its objections. "If [a] court determines that the *Rooker–Feldman* doctrine does not apply, and that it has jurisdiction, it may then consider whether the plaintiff's claims are barred by the related doctrines of claim preclusion or issue preclusion." *Sabertooth, LLC v. Simons (In re Sabertooth, LLC)*, 443 B.R. 671, 682 (Bankr. E.D. Pa. 2011) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild*, 615 F.3d 159, 170 (3d Cir. 2010)). "The determination that the court has subject matter jurisdiction may only be a short reprieve for the plaintiff and a segue by the court to a decision, on the merits, that the federal claim is barred by either claim or issue preclusion." *Id*. (citations omitted).

This Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (B) (allowance or disallowance of claims against the estate).

Michigan's claim preclusion doctrine "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. Michigan*, 470 Mich. at 120-22, 680 N.W.2d at 396. Further, Michigan "take[s] a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* "The Michigan Supreme Court has instructed that '[w]hether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, and whether they form a convenient trial unit.'" *Elder v. Harrison Township*, __ F. Supp. 2d __, 2011 WL 1330672, at *9 (E.D. Mich. Apr. 6, 2011) (citing *Adair*, 470 Mich. at 124–25, 680 N.W.2d at 397-98) (emphasis in original).

There is no dispute as to the first requirement, and this Court previously determined that SLC is Debtor's privy under Michigan law. Therefore, all the remains is a determination of whether the objections raised by SLC were or could have been raised in the various prior state court matters. That determination is easily made. First, the life insurance policy reconciliation denial could have been raised in Debtor's final appeal but was not. The Michigan Court of Appeals noted this in its May 13, 2008, opinion. Furthermore, Debtor already raised the issue of a credit for the $422,457 advance in that 2008 appeal. Any argument for a credit is therefore barred by claim preclusion.

Second, the accountants' fees SLC objects to appear to be included in the April 30, 2007, order of the Washtenaw County Circuit Court. Previously, in an order dated March 27, 2002, that

court ordered that Debtor "shall pay any and all attorney fees and costs **of any kind** incurred related to the implementation of the Consent Judgment of Divorce." (emphasis added). The appeal of this award was denied by the Michigan Court of Appeals in its December 28, 2006, opinion. *Kozlowski v. Bunting*, No. 260869, slip op. at 4-5 (Mich. Ct. App.). Debtor, therefore, raised the issue previously and claim preclusion bars SLC, which is Debtor's privy, from challenging the award now.

Third, the award of statutory interest on the amount owed Ms. Kozlowski as an "equalizer," as well as on the other sanction and fee awards, appears to have been at least raised in Debtor's final appeal. The Michigan Court of Appeals refers, in its May 13, 2008, opinion, to Debtor's challenge to the stipulated amount owed "plus statutory interest." While that appellate decision did not expressly discuss the statutory interest, it is clear Debtor could or should have raised the issue then or during either of the previous two appeals. Again, claim preclusion now bars SLC's objection here.

Fourth, the $187,830.16 deemed forfeited was raised and affirmed by the Michigan Court of Appeals in its first opinion dated July 27, 2004. *Bunting v. Bunting*, No. 246087 (Mich. Ct. App.). SLC is barred by the claim preclusion doctrine from challenging that determination here. Similarly, the contempt sanction of $180,000 for Debtor's non-compliance could have been raised previously but was not. The same constitutional arguments advanced here by SLC could have been brought before the Michigan Court of Appeals. Claim preclusion bars SLC from raising this issue here.

Lastly, the state court Special Master included the Merrill Lynch accounts in her reconciliation report. The Washtenaw state court adopted that report in its December 27, 2002, order. That order was appealed by Debtor, and affirmed in part and reversed in part by the Michigan Court of Appeals' decision dated July 27, 2004. *Bunting v. Bunting*, No. 246087 (Mich. Ct. Appeals). Debtor could have, but did not, raise the issue of whether the accounts were properly divided then. To the extent the division of the Merrill Lynch accounts was not entirely dealt with

in that appeal, the April 11, 2003, order of the Washtenaw state court adopted Ms. Kozlowski's summary of monies due, which included the division of the accounts as a part of the "equalizer" payment determined by the special master. That summary also included amounts for "Collegewood" and "Indian River condem[nation.]" Debtor's appeal of that order did not, but should have, included any arguments related to the equal division of the accounts, or other "items" supposedly not divided in the reconciliation report. Debtor is barred by claim preclusion from raising these issues as an objection to Ms. Kozlowski's proof of claim.

## Conclusion

For the reasons stated in this Opinion, the Court overrules the remaining open objections, with the exception of the calculation of interest on the judgment. Thus, all other objections filed against the proof of claim of Ms. Kozlowski, whether or not expressly addressed in this Opinion or in the September, 28, 2010, Opinion, are overruled and the claim is allowed after interest is recalculated. Counsel for Ms. Kozlowski is directed to prepare an order consistent with this opinion.

**Signed on September 29, 2011**

                **/s/ Daniel S. Opperman**
                **Daniel S. Opperman**
                **United States Bankruptcy Judge**